# Illinois Official Reports

## Supreme Court

---

### *People v. Zimmerman*, 2018 IL 122261

---

| | |
|---|---|
| Caption in Supreme Court: | THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. KIRK P. ZIMMERMAN, Appellant (The Pantagraph *et al.*, Appellees). |
| Docket No. | 122261 |
| Filed | October 18, 2018 |
| Decision Under Review | Appeal from the Appellate Court for the Fourth District; heard in that court on appeal from the Circuit Court of McLean County, the Hon. Scott Drazewski, Judge, presiding. |
| Judgment | Appellate court judgment reversed. <br> Circuit court judgment affirmed. |
| Counsel on Appeal | John P. Rogers and Joseph T. Bante, of Rogers, Sevastianos & Bante, LLP, of Clayton, Missouri, for appellant. <br><br> Donald M. Craven, of Donald M. Craven, P.C., of Springfield, for appellees The Pantagraph, WGLT FM, and Illinois Press Association. <br><br> Lisa Madigan, Attorney General, of Springfield (David L. Franklin, Solicitor General, and Michael M. Glick and Gopi Kashyap, Assistant Attorneys General, of Chicago, of counsel), for the People. |

Justices     JUSTICE THEIS delivered the judgment of the court, with opinion.

Chief Justice Karmeier and Justices Kilbride, Garman, Burke, and Neville concurred in the judgment and opinion.

Justice Thomas dissented, with opinion.

## OPINION

¶ 1   This appeal arises from an order of the circuit court of McLean County granting defendant Kirk Zimmerman's motion to seal his fourth and fifth motions *in limine* over the objection of intervenors The Pantagraph, WGLT FM, and the Illinois Press Association. The circuit court sealed the two motions until after jury selection, at which time it would readdress the issue. The appellate court reversed the circuit court's judgment and remanded for further proceedings. 2017 IL App (4th) 170055, ¶ 20. For the reasons that follow, we reverse the judgment of the appellate court and affirm the judgment of the circuit court.

¶ 2                 BACKGROUND

¶ 3   In July 2015, defendant was charged in McLean County with the first degree murder of his former spouse, Pamela Zimmerman, who died of gunshot wounds on November 3, 2014.

¶ 4   On October 17, 2016, defendant filed a motion for leave to file his fourth and fifth motions *in limine* under seal and a motion to close the court proceedings on the motions. The motions *in limine* sought to exclude "sensitive, private, and/or inflammatory information" about defendant, possible witnesses, and other third parties that had been provided to him by the State during discovery. The underlying discovery evidence sought to be excluded was described in extensive detail in the motions themselves. Defendant asserted that due to the "high level of media saturation regarding th[e] case" publication of the information would violate his privacy rights and taint the jury pool.

¶ 5   On November 16, 2016, intervenors filed a petition to intervene and objections to defendant's motion to close the courtroom and to file the two motions under seal. They argued that the right of access under the first amendment and the common law applied to defendant's motions *in limine* and any proceedings on those motions and that defendant had failed to allege a sufficient basis to overcome the presumption of access.

¶ 6   Defendant responded that no presumption of access applied to the two motions or the proceedings on those motions and that the trial court had full discretion to seal the motions and to conduct closed hearings on them. Alternatively, defendant argued that, even if a presumption of access applied, he had shown that closure was essential to ensure a fair trial and to protect the privacy rights of those involved. On November 21, 2016, the trial court entered an order granting defendant leave to file his fourth and fifth motions *in limine*. The order further provided that the motions were sealed for 90 days and would not be unsealed until the court so ordered.

¶ 7        On December 22, 2016, after allowing intervenors' petition to intervene, the trial court held a hearing on the two motions *in limine*.[1] At the hearing, defendant withdrew his request to close the proceedings because the State agreed not to introduce the evidence at issue at trial. Consequently, the only issue that remained was defendant's request to continue to seal the motions until a jury was impaneled.

¶ 8        At the hearing, the assistant state's attorney informed the trial court:

> "I take no position on whether the court continues to seal these. I will only say that this is a little frustrating because we are not, nor did we, intend on offering these things in our case in chief. During a big case like this, there may be any number of things the State is aware of through an investigation that the press would never become privy of because the State never intends on offering those things as evidence. These things fall into that vein. *** But as to whether the court decides to seal indefinitely or not, we'll leave that to the court."

¶ 9        In ruling on defendant's request to continue to seal the motions, the trial court specifically recognized, *inter alia*, "that there is a constitutional presumption of access under the First Amendment that applies to court proceedings and records which, first, have historically been open to the public and, second, which have a purpose and function that would be furthered by disclosure." After discussing first amendment considerations, the trial court concluded that intervenors did not have a first amendment right to the motions that sought to exclude material that had not been introduced into evidence but, rather, had been obtained by defendant from the State in discovery.

¶ 10       Additionally, the trial court "acknowledge[d] the common law right of access to court records." Ultimately, in granting defendant's request to continue to seal the two motions, the trial court recognized, "as to those matters, which were not subject to disclosure or availability to the public at large, *** the public's right of access to court proceedings and records is not absolute, and the court has supervisory authority over its own records and files and may deny access at its discretion."

¶ 11       On January 3, 2017, the trial court entered a written order, in pertinent part, granting the fourth and fifth motions *in limine* and noting that the State had acknowledged the material would not be introduced by the State at trial. The trial court also denied intervenors' motion to open the motions *in limine* to public inspection. The trial court ordered that the two motions would remain sealed until after selection of a jury. At that time, the court would revisit intervenors' motion to unseal and would have a hearing on the same. Intervenors filed a notice of interlocutory appeal under Illinois Supreme Court Rule 307(a)(1) (eff. Nov. 1, 2016) challenging the trial court's order.

¶ 12       The appellate court recognized the common-law right of access to judicial records and documents, the statutory right to review judicial records contained in section 16(6) of the Clerks of Courts Act (705 ILCS 105/16(6) (West 2016)), and the first amendment right of access that attaches to certain court records. 2017 IL App (4th) 170055, ¶ 10. The appellate court concluded that the trial court erred by finding the "presumption of access" did not attach to the motions *in limine* filed by defendant. *Id.* ¶ 18. The appellate court held that "[s]ince the presumption did attach to the documents at issue, the next step is to determine whether the

_____

[1]No party objected to the intervention.

presumption has been rebutted." *Id.* For these reasons, the appellate court reversed the trial court and remanded for further proceedings on intervenors' objection to the motions being filed under seal. *Id.* ¶ 20.

¶ 13 This court granted defendant's petition for leave to appeal. Ill. S. Ct. R. 315 (eff. Mar. 15, 2016).

¶ 14                                    ANALYSIS

¶ 15 Initially, we address the State's contention that the trial court's order was not the proper subject of an interlocutory appeal under Illinois Supreme Court Rule 307(a)(1) (eff. Nov. 1, 2016). The State asserts that the appellate court does not have jurisdiction to review interlocutory orders sealing motions in criminal cases.

¶ 16 Rule 307(a)(1) provides:

> "(a) Orders Appealable; Time. An appeal may be taken to the Appellate Court from an interlocutory order of court:
>
> (1) granting, modifying, refusing, dissolving, or refusing to dissolve or modify an injunction[.]" Ill. S. Ct. R. 307(a)(1) (eff. Nov. 1, 2016).

¶ 17 Intervenors rely upon *In re A Minor*, 127 Ill. 2d 247 (1989), and *Skolnick v. Altheimer & Gray*, 191 Ill. 2d 214 (2000), to support their contention that the appellate court had jurisdiction over the appeal.

¶ 18 In *In re A Minor*, the trial court entered an order during the course of a juvenile proceeding banning a newspaper from publishing the name of a minor who had been charged in connection with a fatal shooting. *In re A Minor*, 127 Ill. 2d at 251. The trial court also banned the newspaper from the courtroom during future hearings in the case unless it agreed to comply with the order not to publish the name of the juvenile. *Id.* The appellate court held the order was not injunctive in nature and dismissed the newspaper's appeal on the grounds that the trial court's order was not reviewable under Rule 307(a)(1). *Id.* at 254. This court reversed and explained that a court looks to the substance, not the form, of an order to determine if it is injunctive in nature. *Id.* at 260-61. In finding that the appellate court erred, we held that an order circumscribing the publication of information is reviewable under Rule 307(a)(1) as an interlocutory injunctive order. *Id.* at 263.

¶ 19 In *Skolnick*, the trial court entered an order requiring the parties to designate information disclosed in discovery as confidential, and once so designated, the information could only be disclosed to persons expressly identified in the protective order. *Skolnick*, 191 Ill. 2d at 221-22. "By its terms, therefore, the order forbade the publication of certain information, or, in other words, circumscribed the parties' opportunity to 'do a particular thing.' " *Id.* at 222. The defendant appealed under Rule 307(a)(1). *Id.* at 221. This court rejected the plaintiffs' argument that the appellate court lacked jurisdiction over the appeal and, as in *In re A Minor*, held that a trial court's order circumscribing public access to information is reviewable by the appellate court as an interlocutory injunctive order under Rule 307(a)(1). *Id.* at 221, 223. In reaching this determination, we reiterated that Illinois courts have construed the meaning of "injunction" in Rule 307(a)(1) broadly and that a court looks to the substance, not the form, of an order to determine if it is injunctive in nature. *Id.* at 221.

¶ 20 As the State concedes, Rule 307(a)(1) has long been the vehicle in Illinois for appellate review of orders denying access to criminal records or proceedings. *E.g.*, *In re Gee*, 2010 IL

App (4th) 100275, ¶ 38 (holding the trial court's order to continue to seal some documents related to a search warrant sought in a homicide investigation was proper after finding the appellate court had jurisdiction to entertain the media intervenors' appeal under Rule 307(a)(1)); *People v. Kelly*, 397 Ill. App. 3d 232, 244-48 (2009) (holding that Rule 307(a)(1) was the appropriate vehicle for media members to challenge a trial court's order sealing pretrial proceedings and records and noting that intervention has advantages over a declaratory action, as it avoids the issues that would arise if a civil judge were required to question anew a criminal judge's discretionary decision to seal records or proceedings); *People v. Pelo*, 384 Ill. App. 3d 776, 779-80 (2008) (holding that media outlets were authorized to file an interlocutory appeal under Rule 307(a)(1) challenging an order denying access to an evidence deposition); *People v. LaGrone*, 361 Ill. App. 3d 532, 537-38 (2005) (holding in an interlocutory appeal filed by the media that the trial court erred by not making adequate factual findings on the record to justify denying public access to a hearing on the defendant's motions *in limine*).

¶ 21   The State has not suggested another rule or statute that would be the correct route to review this type of order. Instead, the State urges us to refer the issue to our rules committee for consideration of the proper vehicle for reviewing orders denying access to criminal records or proceedings. We find that unnecessary.

¶ 22   Rule 307(a), found in this court's civil appeals rules, provides parties a right to appeal an interlocutory order "granting, modifying, refusing, dissolving, or refusing to dissolve or modify an injunction." Ill. S. Ct. R. 307(a)(1) (eff. Nov. 1, 2016). This court has already found that this rule confers appellate jurisdiction to review such interlocutory orders circumscribing the public access of information in both juvenile and civil cases. *In re A Minor*, 127 Ill. 2d at 263; *Skolnick*, 191 Ill. 2d at 221. No reason exists to treat interlocutory orders circumscribing public access to documents in criminal proceedings differently. As this court instructed in *In re A Minor* and *Skolnick*, we look to the substance of the trial court's order. Accordingly, we find that the order in this case circumscribing public access to documents is reviewable under Rule 307(a)(1) as an interlocutory injunctive order.[2]

¶ 23   Having determined that the appellate court had jurisdiction over the appeal, we now turn to the merits of defendant's argument.

¶ 24                           First Amendment Right of Access

¶ 25   Defendant initially contends that the trial court properly granted his request to seal the two motions *in limine* and that the appellate court erred by finding the motions were subject to a right of public access under the first amendment. Similarly, the State argues that a first amendment right of access does not attach to defendant's motions, which contained noncrucial evidence that had been disclosed during the discovery process and would not be admitted at trial. Intervenors simply want us to adopt the reasoning of the appellate court.

¶ 26   The United States Supreme Court first recognized a first amendment public right to attend criminal trials in *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 576 (1980). The Court held that "[i]n guaranteeing freedoms such as those of speech and press, the First Amendment can be read as protecting the right of everyone to attend trials so as to give meaning to those

_____

[2]We note the trial court's order sealing the motions has no impact on the underlying criminal case, the prosecution of which continues unimpeded. See *People v. Zimmerman*, 2018 IL App (4th) 170695.

explicit guarantees." *Id.* at 575. Following *Richmond Newspapers*, the Court held that a first amendment right of access could apply in other criminal contexts such as *voir dire* proceedings (*Press-Enterprise Co. v. Superior Court of California*, 464 U.S. 501, 510-11 (1984) (*Press-Enterprise I*)) and preliminary hearings (*Press-Enterprise Co. v. Superior Court of California*, 478 U.S. 1, 10 (1986) (*Press-Enterprise II*)).

¶ 27 Thereafter, this court specifically found a public right of access to court records embodied in the first amendment to the United States Constitution. *Skolnick*, 191 Ill. 2d at 231-32 (citing *Grove Fresh Distributors, Inc. v. Everfresh Juice Co.*, 24 F.3d 893, 897 (7th Cir. 1994)). In *Skolnick*, the defendant in a separate appeal had challenged the trial court's order placing her counterclaim under seal. *Id.* at 230. We ultimately found the order violated the public's right of access to court records under either the first amendment or common-law standard. *Id.* at 232-33. We also held that not all court records are subject to first amendment protection. *Id.* at 232.

¶ 28 The determination of whether a first amendment right of access attaches to a particular record requires a two-step process under what is typically known as the "experience and logic test." *Press-Enterprise II*, 478 U.S. at 9-10 (1986); see also *Skolnick*, 191 Ill. 2d at 232. First, a court must consider whether the document is one that has historically been open to the press and general public (the "experience" prong). *Press-Enterprise II*, 478 U.S. at 8. Second, a court must consider whether public access to the document plays a significant positive role in the functioning of the particular judicial process in question (the "logic" prong). *Id.* The Supreme Court held that "[t]hese considerations of experience and logic are, of course, related, for history and experience shape the functioning of governmental processes." *Id.* at 9. If the test of experience and logic is met, a qualified first amendment right of public access attaches to the material. *Id.*

¶ 29 But even when a first amendment right of public access attaches to a document, it is not absolute. *Id.* As the Supreme Court explained, although open criminal proceedings give assurances of fairness to both the public and the accused, there are some limited circumstances in which the right of the accused to a fair trial might be undermined by publicity. *Id.* In such cases, the trial court must determine whether the situation is such that the rights of the accused override the qualified first amendment right of access to the proceeding or material. *Id.*; see also *Skolnick*, 191 Ill. 2d at 232.

¶ 30 In *Press-Enterprise II*, the Court held:

"'[T]he [first amendment] presumption may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest. The interest is to be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered.'" *Press-Enterprise II*, 478 U.S. at 9-10 (quoting *Press-Enterprise I*, 464 U.S. at 510).

¶ 31 As noted, the first amendment presumption of access applies only to those documents that satisfy the experience and logic test.

¶ 32 In this case, the "experience" prong weighs against a first amendment right of access. Defendant's motions sought to exclude from trial "sensitive, private, and/or inflammatory information" about him, possible witnesses, and other third parties that had been provided to him by the State during discovery. It is undisputed that the State does not intend to introduce

- 6 -

any of the evidence contained in the motions at trial and that defendant's fourth and fifth motions *in limine* were granted by the trial court without objection by the State.

¶ 33    Intervenors fail to acknowledge that there is no tradition of access to discovery material not yet admitted at trial. *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 33 (1984). Information that surfaces during pretrial discovery may be unrelated, or only tangentially related, to the underlying cause of action. *Id.* The Court instructed that "restraints placed on discovered, but not yet admitted, information are not a restriction on a traditionally public source of information." *Id.* Whether in a civil or criminal case, discovery is "essentially a private process because the litigants and the courts assume that the sole purpose of discovery is to assist in trial preparation." *Courier-Journal, Inc. v. McDonald-Burkman*, 298 S.W.3d 846, 848 (Ky. 2009). Generally, the documents themselves contain no evidentiary value until admitted into evidence at trial or other proceedings. *Id.* at 849. Public access to such material would therefore not play a significant role in the administration of justice in the case. *Id.* (holding that intervenor news organization did not have a first amendment right of access to the pretrial discovery materials at issue in a pending criminal case).

¶ 34    The State and defendant are correct that because the material at issue in the two motions was disclosed during the discovery process, is not otherwise publicly available, is wholly tangential to the criminal case, and will not be admitted at trial, it is not subject to a tradition of access.

¶ 35    Similarly, we find the "logic" prong weighs against a presumption of first amendment access in this case.

¶ 36    Intervenors do not provide any authority to support a finding that public access to the type of pretrial discovery at issue here would play a significant positive role in the judicial process. The discovery process often generates a significant amount of irrelevant and unreliable material that plays no role in the criminal proceeding and in which the public has limited interest. As the State informed the trial court in this case, there may be any number of matters of which the State becomes aware in the course of an investigation that are shared with a defendant through discovery. Such material, however, generally does not become public because there is no intention of offering it into evidence. In fact, had it not been for defendant's fourth and fifth motions *in limine*, there would be no material on file for intervenors to seek access to, as the State has no intention of introducing it.

¶ 37    Additionally, disclosure of the discovery evidence in this case could potentially play a negative role by exposing the public and potential jurors to irrelevant information that will not be used to support a conviction and could taint the jury pool. "If it were otherwise and discovery information and discovery orders were readily available to the public and the press, the consequences to the smooth functioning of the discovery process would be severe." *United States v. Anderson*, 799 F.2d 1438, 1441 (11th Cir. 1986); see also *People v. Williams*, 188 Ill. 2d 365, 368 (1999) (holding the *in limine* order excludes inadmissible evidence and protects the movant from whatever prejudicial impact the mere asking of the questions and the making of the objections may have upon a jury).

¶ 38    Having found that a first amendment presumption of access does not attach to defendant's motions in this case, we now turn to defendant's claim that the trial court did not abuse its discretion by denying intervenors access to the motions under a common-law right of access.

¶ 40       Although the first amendment presumption of access applies only to those documents that satisfy the experience and logic test, under the common law there is a presumption that allows the public to inspect and copy public records and documents, including all documents filed with the court. *Skolnick*, 191 Ill. 2d at 230 (citing *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597 (1978)). This common-law right of public access to court records is "essential to the proper functioning of a democracy [citation] in that citizens rely on information about our judicial system in order to form an educated and knowledgeable opinion of its functioning." *Id.* (citing *Minneapolis Star & Tribune Co. v. Schumacher*, 392 N.W.2d 197, 202 (Minn. 1986)).

¶ 41       The availability of court files for public scrutiny is also essential to the public's right to " 'monitor the functioning of our courts, thereby insuring quality, honesty and respect for our legal system.' " *Id.* (quoting *In re Continental Illinois Securities Litigation*, 732 F.2d 1302, 1308 (7th Cir. 1984)). "When courts are open, their work is observed and understood, and understanding leads to respect." *In re Marriage of Johnson*, 232 Ill. App. 3d 1068, 1074 (1992). The common-law right of access symbolizes the recognition "that the public interest is best served by increasing the public's knowledge about what is transpiring inside the judicial process." *Skolnick*, 191 Ill. 2d at 230 (quoting *Newell v. Field Enterprises, Inc.*, 91 Ill. App. 3d 735, 748 (1980)).

¶ 42       In Illinois, the legislature has also codified this common-law right of access to judicial records in section 16 of the Clerks of Courts Act, which provides, in pertinent part:

> "All records, dockets and books required by law to be kept by [circuit court] clerks shall be deemed public records, and shall at all times be open to inspection without fee or reward, and all persons shall have free access for inspection and examination to such records, docket and books, and also to all papers on file in the different clerks' offices and shall have the right to take memoranda and abstracts thereto." 705 ILCS 105/16(6) (West 2016).

¶ 43       This court has held, however, that the common-law right of access to judicial records is not absolute. *Skolnick*, 191 Ill. 2d at 231. We have recognized that "[e]very court has supervisory power over its own records and files, and access [may be] denied where court files might[ ] become a vehicle for improper purposes." *Id.* (quoting *Nixon*, 435 U.S. at 598). Consequently, "whether court records in a particular case are opened to public scrutiny rests with the trial court's discretion, which must take into consideration all facts and circumstances unique to that case." *Id.* For purposes of review, the trial court must provide findings on the record specific enough for a reviewing court to consider whether closure of the records was proper.

¶ 44       The trial court in this case did not abuse its discretion by allowing defendant's two motions *in limine* to remain sealed until after a jury is impaneled. In denying intervenors' request to immediately access the documents, the trial court specifically recognized the common-law right of public access to all documents filed with the court. The trial court also recognized that this right is not absolute, that the evidence at issue in the two motions was not publicly available, and that the court possesses supervisory authority over its own records and files and may deny access at its discretion.

¶ 45       The trial court was familiar with the history of the case and the serious charges against defendant, as well as the publicity that this case has already received and will likely continue to receive in the future. The trial court was also aware that the State does not intend to introduce

into evidence any of the tangential matters referred to in the motions *in limine*, which the court granted without objection.

¶ 46 A thorough review of the hearing on intervenors' request to unseal the motions reveals that the trial court attempted to strike a careful balance among competing interests. The trial court recognized the common-law right of access to court records, as well as defendant's right to a fair trial, which might be undermined by publicity of discovery material that will not be admitted at trial. The court's order was also of a limited duration. After a jury is seated in this case, the trial court has agreed to revisit the issue to determine whether it would be proper to allow public access to the motions at that time.

¶ 47 Finally, the State suggests that this court should remand to the trial court for the limited purpose of determining whether defendant has overcome the common-law presumption of access to court records. We find that unnecessary. The trial court has already done what the State requests. We find no need to remand for the trial court to elaborate further on its ruling.

¶ 48                                                 CONCLUSION

¶ 49 For the foregoing reasons, the judgment of the appellate court is reversed, and the judgment of the circuit court is affirmed.

¶ 50 Appellate court judgment reversed.

¶ 51 Circuit court judgment affirmed.

¶ 52 JUSTICE THOMAS, dissenting:

¶ 53 I respectfully disagree with the majority's conclusion that this court's rules presently provide for the interlocutory appeal filed in this case.

¶ 54 The issue here is whether Rule 307(a) confers appellate jurisdiction to review an interlocutory order sealing certain pleadings in a criminal case. The majority reasons that, because "[t]his court has already found that this rule confers appellate jurisdiction to review such interlocutory orders circumscribing the public access of information in both juvenile and civil cases," "[n]o reason exists to treat interlocutory orders circumscribing public access to documents in criminal proceedings differently." *Supra* ¶ 22. In fact, a very good reason exists for doing exactly that, namely, that our rules state explicitly that Rule 307(a) does not apply to criminal cases.

¶ 55 In this court's rules, "separate articles contain the rules applicable to civil proceedings (articles II and III) and those applicable to criminal proceedings (articles IV and VI)." Ill. S. Ct. R. 1, Committee Comments (rev. July 1, 1971). Rule 307(a) is set forth in article III of this court's rules. Article III is titled "Civil Appeals Rules," which means that, by definition, Rule 307(a) is a "civil appeal rule." Ill. S. Ct. Rs. art. III. This matters because the case before us is not a civil case. Rather, it is a criminal case. As such, this case is governed not by the rules set forth in article III but rather by those set forth in article VI, which is titled "Appeals in Criminal Cases, Post-Conviction Cases, & Juvenile Court Proceedings." Ill. S. Ct. Rs. art. VI. Among the rules set forth in article VI is Illinois Supreme Court Rule 612 (eff. July 1, 2017), which is titled "Procedural Matters Which Are Governed by Civil Appeals Rules." As its title suggests, Rule 612 enumerates which "civil appeals rules apply to criminal appeals insofar as appropriate." Ill. S. Ct. R. 612(b) (eff. July 1, 2017). The ensuing list identifies 23 "civil appeal

rules" that apply in whole or in part to criminal appeals. Quite notably, Rule 307(a) is not among them. In other words, in the course of drafting Rule 612, this court already had occasion to consider whether Rule 307(a) applies to criminal appeals. Rule 307(a)'s exclusion from the list set forth in Rule 612 clearly reflects the court's conclusion that it does *not*, and that conclusion should control the jurisdictional analysis in this case.

¶ 56     The majority, of course, reaches the opposite conclusion. However, the majority reaches this conclusion without ever mentioning, let alone discussing or analyzing, Rule 612. Again, one of the central questions in this case is whether a particular civil appeal rule applies in this, a criminal case. At a bare minimum, the court's analysis of that question should at some point contend with the fact that this court has drafted a rule specifically enumerating which civil appeal rules apply in criminal cases, as presumably that rule has something to say. By the same token, if the majority's omission of Rule 612 from its analysis reflects the fact that Rule 612 truly has *nothing* to say on this question, then I am left wondering why we even bothered to draft Rule 612 in the first place. If Rule 612 is not relevant here, it is not relevant anywhere.

¶ 57     Compounding this problem is the fact that the two decisions anchoring the majority's jurisdictional analysis do not speak to the question raised in this case. The issue in this case is whether Rule 307(a) applies to criminal cases. Neither *In re A Minor* nor *Skolnick* in any way addresses the types of *cases* to which Rule 307(a) applies. Rather, both cases address the types of *orders* to which Rule 307(a) applies. More specifically, the issue in both *In re A Minor* and *Skolnick* was whether interlocutory restraints on the publication of information should be treated as injunctions for purposes of Rule 307(a). See *In re A Minor*, 127 Ill. 2d at 260-63; *Skolnick*, 191 Ill. 2d at 221-22. And while both courts answered that question in the affirmative and therefore found that appellate jurisdiction was present, neither court considered whether the case before it fell into the *category of cases* to which Rule 307(a) applies. Thus, it is begging the question to say, as the majority does, that *In re A Minor* and *Skolnick* settle the matter at hand, as neither case even discusses the question they are deemed to answer.

¶ 58     All of that said, I am perfectly open to the possibility that interlocutory restraints on the publication of information should be reviewable immediately in criminal cases and that our rules should be amended to make that policy manifest. In other words, my quarrel is not with the rule that the majority fashions in this case. Rather, my quarrel is with the majority treating our rules as if they already embodied this policy, which clearly they do not. Again, Rule 612 specifically enumerates the civil appeal rules that apply to criminal cases, and Rule 307(a) is conspicuously absent from the list. Unless and until that changes, I would hold that interlocutory restraints on the publication of information are *not* immediately reviewable in criminal cases. To hold otherwise is to undermine both the authority and the necessity of this court's rulemaking power.

¶ 59     Accordingly, I respectfully dissent. In doing so, I express no opinion on whether defendant's two motions *in limine* fall within either the first amendment or the common-law right of public access. That being said, I would point out only that, contrary to the majority's suggestion that intervenors are seeking such things as "discovery material not yet admitted at trial," "pretrial discovery," and "irrelevant and unreliable material that plays no role in the criminal proceeding" (*supra* ¶¶ 33, 36), in fact intervenors are seeking only the two motions *in limine* that defendant himself filed with the court and thereby made part of the official court record. To be sure, these motions purportedly identify and describe with precision the types of

raw discovery material about which the majority rightly expresses concern, and that is unfortunate. But that reality does not mean that the *motions themselves* are raw discovery material, and I object to the majority analyzing the public access question as if seeking access to the former is indistinguishable from seeking access to the latter.